(No. 36194.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HORACE LEE YARBROUGH, Plaintiff in Error.

*Opinion filed November 24, 1964.*

CHARLES F. THOMAS, of Rockford, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and WILLIAM R. NASH, State's Attorney, of Rockford, (FRED G. LEACH and GEORGE W. KENNEY, Assistant Attorneys General, and WILLIAM H. SNIVELY, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE SOLFISBURG delivered the opinion of the court:

The defendant, Horace Lee Yarbrough, was indicted by the grand jury of the Winnebago County circuit court for the crime of forcible rape. He waived trial by jury, was found guilty by the court and sentenced to the penitentiary for life.

The defendant contends on this writ of error that the evidence was insufficient to establish his guilt and that a confession which was obtained by improper means was admitted in evidence. The victim of the assault testified that at the time of the crime she and her husband were living in a house trailer. After her husband left for work at about 8:00 in the morning, she went back to sleep and awakened to find a man standing over her bed. She identified the defendant as the man who had awakened her. She testified that the defendant choked her and that she struggled with him. When she ceased struggling, he stopped choking her and she told him that she was pregnant and that she was afraid he would kill the baby. The defendant made no reply and took off her pajamas and had intercourse with her. The witness testified that her throat was sore and bruised where the defendant had choked her.

After the defendant left the trailer she ran over to her neighbors, Mr. and Mrs. McFarland, and told them she had been raped and the authorities were called. She was then taken to a hospital where she was examined by a physician. The examination showed that she had recently had sexual intercourse, but disclosed no injuries to her private parts. About a week later the witness identified the defendant out of a police line-up of four men. At the time of the crime the defendant had a beard and mustache, but at the time she identified him he was clean shaven. Mrs. McFarland corroborated the testimony as to the victim's statement that she had been raped and also testified that she observed bruises on the victim's neck. Photographs were introduced in evidence showing the bruise marks.

A detective testified that he obtained a description of the

defendant from the victim and that he arrested the defendant about a week after the crime. As the detective and his partner were driving to the county jail with the defendant, the defendant told him to stop the car and he would tell the the detectives the whole story. The detective testified, without objection, that the defendant then admitted entering the trailer, choking the victim and having intercourse with her. They took the defendant to the county jail where a written statement was taken by an assistant State's Attorney and thereafter they took the defendant to the trailer where he re-enacted the crime. When they returned to the jail they placed the defendant in a line-up and he was identified by the rape victim.

A deputy sheriff testified that he was with the detective at the time of the defendant's arrest. He corroborated the detective's testimony as to the defendant's oral confession in the car, the written confession, the line-up, and the re-enactment, except that he testified that the written statement was taken after the line-up and the re-enactment.

The assistant State's Attorney who had taken the written statement from the defendant started to testify as to the statement, but counsel for the defendant objected on the ground that the statement was involuntary. A hearing was then held to determine the admissibility of the statement. The defendant testified that as he was riding with the detective and the deputy sheriff, they told him three or four times that if he did not tell the truth, they would take him out in the woods and shoot him, and also threatened to turn the defendant loose in the woods and have the victim's husband go after him with a gun. He testified that he then agreed to sign a statement. When they got to the jail, the officers repeated their threats. The defendant testified that he asked for a lawyer but that the officers told him he could not have a lawyer until he made a statement. He testified that no one had struck him, but that the officers had pushed

him down in a chair. He testified that he made a statement at the jail to the two officers but denied making any statement to the assistant State's Attorney in the presence of a stenographer and denied making any statement to the officers in the car.

At the hearing on the admissibility of the statement, the two officers denied threatening the defendant, denied the use of any physical force, and denied telling the defendant that he could not have a lawyer. The assistant State's Attorney testified that he took a statement from the defendant and that the questions and answers were reported in shorthand by his secretary. He denied making any promises or threats and testified that he did not observe anyone else threaten or abuse the defendant. The secretary who reported the statement testified that the two officers and the assistant State's Attorney were present at the time the statement was taken. She testified that she never heard any of the parties make any threats or promises or saw any use of physical violence. She never heard the defendant request to see a lawyer and testified that the defendant was advised that he had a right to make a telephone call to an attorney. At the conclusion of the hearing the court ruled that the statement was admissible. The written statement was substantially the same as the defendant's previous oral confession.

The only testimony in support of the defendant's claim that his statement was coerced was his own testimony. His claims of threats and force were denied by all of the parties having anything to do with the taking of the statement and his testimony that he was denied the right to counsel was likewise denied by the other witnesses. The credibility of the defendant's testimony is substantially weakened by the fact that he denied ever giving a written statement to the assistant State's Attorney in the presence of the secretary, in the face of clear and convincing evidence that such a

statement was made. In our opinion the trial court properly ruled that the confession was admissible. *People* v. *Spencer*, 27 Ill.2d 320, *People* v. *Miller*, 13 Ill.2d 84.

The defendant testified that at the time of the crime he was at the employment office making application for unemployment compensation. A card bearing the defendant's name and showing a record of his visits to the employment office was admitted in evidence. The card contained rubber stamped dates showing the dates on which the defendant had reported to the office. Starting with the first part of May, 1958, these rubber stamped dates were roughly a week apart, although in some cases more than a week elapsed. The last of the stamped dates was August 27, 1958, the day before the crime, and on the next line appears the handwritten date of August 28. The defendant insisted that he was at the office on the morning of the 28th and that the handwritten date was inserted by the clerk at the employment office, but was unable to explain why it was handwritten when all of the other dates were stamped and was also unable to explain why he had reported to the office on August 28 when he had been there on August 27. There was no testimony by anyone from the employment office. The defendant denied committing the crime and denied that he had made any oral or written confessions. The only other witnesses for the defendant were character witnesses.

In our opinion the evidence was sufficient to establish the defendant's guilt. In addition to the defendant's oral and written confessions the victim of the assault positively identified the defendant at the police line-up and at the trial and her testimony as to the force used by the defendant was corroborated by evidence that she had bruises on her throat immediately after the crime. *People* v. *Ikerd*, 26 Ill.2d 573.

The judgment of the circuit court of Winnebago County is therefore affirmed.

*Judgment affirmed.*