**People of the State of Illinois, Plaintiff-Appellee, v. Donald Evans, Defendant-Appellant.**

**Gen. No. 50,930.**

First District, Third Division.

June 29, 1967.

Clarold L. Britton, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Matthew J. Moran, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

The defendant was indicted for the robbery of a service station. Prior to trial he filed a motion to suppress a confession on the ground of involuntariness. This was denied. He was thereafter tried by jury, convicted and sentenced to serve from two to six years in prison. He contends that he requested and was denied counsel during the period of interrogation when the confession was obtained. He further contends that the State failed to prove him guilty beyond a reasonable doubt. The facts follow.

During the early morning of April 26, 1964, three men robbed Sibley Service Station in Harvey, Illinois. One man waited in the car while the other two held the station attendant at gunpoint and robbed him of about $75. As the robbers fled from the station in the car, the attendant grabbed a shotgun, ran out and fired one shot as the car disappeared down the street. Shortly thereafter the car was found abandoned at the scene of an accident. Investigation revealed that it was registered in the name of the defendant. The police later discovered that defendant had reported the car stolen at 9:00 a. m. on April 26, 1964 (about five hours after the robbery).

Three days later the police contacted the defendant and told him his car had been located in Harvey, Illinois, and that he could pick it up at the police station. Defendant went to the station accompanied by Melvin Watts, Richard Williams and Garcia Ruez. The police then told defendant that he had been identified as a holdup man and they asked all four men to submit to identification in a lineup of seven men. The service station attendant identified the defendant and Melvin Watts as participants in the robbery.

The defendant testified that he asked the police for permission to call a lawyer, but was told he could not call anybody until they (the police) were ready for him to do so. This testimony was corroborated by Melvin Watts. The third prisoner, Richard Williams, testified that he made a similar request for counsel. Defendant also testified that he was alone with Detective Cieciersky for a period of time and that during that time the detective questioned him roughly, hit him in the chest, slapped him and pulled him off his chair. Defendant said that he heard Watts crying in an adjacent room. Later on, when defendant and Watts were in the same room with Detective Cieciersky, another policeman entered the room and asked if they wanted a drink. He returned with a bottle of wine. Defendant testified that Cieciersky said, "No, not none of that stuff, bring in some good stuff." The officer then produced a bottle of House of Lords Scotch whisky. Defendant and Watts drank the liquor and became thoroughly intoxicated.

Detective Cieciersky and Officer Ohrt testified that they did not beat the prisoners or ply them with liquor. They specifically denied that the prisoners had requested counsel.

At the conclusion of the hearing on the motion to suppress the confession on the ground of involuntariness, the court and counsel discussed the right of an accused

292

to the assistance of counsel. The court concluded that the right to counsel is one which must be asked for by the accused. He also recognized that there was a dispute as to whether such request had been made. He did not decide the issue, but said, "I feel that on that point alone it is not a ground to suppress the confession but will be a question for the jury to determine." The court then denied the motion to suppress.

The evidence presented at the trial consisted of the confession and the positive identification of defendant by the service station attendant. This was ample to support a finding of guilty beyond a reasonable doubt. It remains to be determined however whether the confession was obtained in violation of defendant's constitutional rights.

██ When an investigation is no longer a general inquiry into an unsolved crime, but has begun to focus on a particular suspect and the suspect is held in custody and submitted to interrogation which may elicit incriminating statements, he has a constitutional right to the assistance of counsel. No statement elicited in derogation of this right may be used against him. Escobedo v. Illinois, 378 US 478 (1964); People v. Hartgraves, 31 Ill2d 375, 202 NE2d 33; People v. Kees, 32 Ill2d 299, 205 NE2d 729; People v. Lewis, 32 Ill2d 391, 207 NE2d 65. In this state however the defendant must show that a request for counsel was made by him or in his behalf. People v. Hartgraves, supra.

██ In the case before us the defendant testified that he requested counsel. The police testified that he did not. This relates directly to the admissibility of the confession and must be determined in the first instance by the court. Illinois adheres to the "Wigmore" or "orthodox" procedure, under which the judge first hears the evidence outside the presence of the jury for the purpose of determining the admissibility of the purport-

293

ed confession. If the court admits the confession, the evidence with respect to the circumstances under which the confession was given is submitted to the jury and they consider its voluntariness, as affecting its weight or credibility, in reaching their verdict. People v. Miller, 13 Ill2d 84, 148 NE2d 455; People v. Fox, 319 Ill 606, 150 NE 347; see 3 Wigmore, Evidence (3d Ed, 1940) § 861. The rationale of this involved procedure arises from the apprehension that the jury might confuse the issue of voluntariness of the confession with the issue of guilt or innocence. Therefore a hearing apart from and presumably uninfluenced by the issue of guilt or innocence is left to the court.

In the instant case the court should have first determined whether defendant asked for counsel at the time of or before the interrogation and should then have determined the issue of the voluntariness of the confession. This the court did not do. The procedure to correct this error is set forth in People v. Beattie, 31 Ill2d 257, 201 NE2d 396; and People v. Jackson, 31 Ill2d 408, 202 NE2d 465. Approved by the United States Supreme Court in Jackson v. Denno, 378 US 368 (1964) and in Sims v. Georgia, 385 US 538 (1967) where the court said, at pp 543–544:

> "A constitutional rule was laid down in that case [Jackson v. Denno] that a jury is not to hear a confession unless and until the trial judge has determined that it was freely and voluntarily given. The rule allows the jury, if it so chooses, to give absolutely no weight to the confession in determining the guilt or innocence of the defendant but it is not for the jury to make the primary determination of voluntariness. Although the judge need not make formal findings of fact or write an opinion, his conclusion that the confession is voluntary must appear from the record with unmistakable clarity."

The cause is remanded with directions to conduct a new preliminary hearing on the motion to suppress the confession, but if after hearing all relevant evidence, including that with respect to the request for counsel, the trial court suppresses the confession as evidence, the judgment shall be set aside and a new trial granted. If however the motion to suppress is denied, then as was directed in People v. Jackson, supra, a new final judgment of conviction shall be entered.

Cause remanded for further proceedings in accordance with the views herein expressed.

SULLIVAN, P. J. and DEMPSEY, J., concur.